Albert C. Phy v. Commissioner.
Phy v. Commissioner
Docket No. 13218.
United States Tax Court
1948 Tax Ct. Memo LEXIS 141; 7 T.C.M. (CCH) 452; T.C.M. (RIA) 48122; July 6, 1948
*141 On the record, held, petitioner has failed to establish that the business conducted in the taxable year 1944, under the name "Albert C. Phy," was not operated as a sole proprietorship. All the net income therefrom is taxable to petitioner. J. Webster Jones, Esq., 812 Morris Bldg., Philadelphia, Pa., for the petitioner. Karl W. Windhorst, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income tax for the year 1944 in the amount of $1,603.52. The sole issue is whether all the net income of a business conducted under the name of "Albert C. Phy" during the taxable year 1944 is taxable to petitioner as sole proprietor. Findings of Fact Petitioner, Albert C. Phy, is the husband of Emily S. Phy. They were married in August 1921 and have four children. Petitioner filed his income tax return for the calendar year 1944 with the collector of internal revenue at Philadelphia, Pennsylvania. Petitioner was a skilled sheet metal worker. Since 1919 he was employed at various times by the Philadelphia Navy Yard, Baldwin Locomotive Works, Budd Manufacturing Company and the Heinz Manufacturing *142 Company. Commencing about the year 1931, petitioner received from the Ralph Kearney Company various kinds of metal work. The materials were furnished, and the labor was performed in the basement of their home. Beginning in about 1932, petitioner instructed his wife so that she could perform the various operations required to do the work. Mrs. Phy worked in the daytime and in the evenings both worked together, usually until about 10:30 p.m. In October 1943, petitioner resigned from the Heinz Company and thereafter both he and his wife devoted their full time to such business. Prior to October 1943 his wife performed from three-fifths to two-thirds of all the work received from the Kearney Company. From 1931 to 1938, the amount of the business done each year was between $300 and $700. The moneys earned were put into a common fund. Part of the moneys were used to buy additional tools and equipment, entailing an expenditure for such purposes over the years of approximately $1,200. The remainder was used for personal expenses. Prior to 1929, petitioner and his wife had established a joint bank account. In 1929, Mrs. Phy received from her father's estate between $900 and $1,000 which was *143 placed in a joint account. They maintained a joint account in the Aldine Trust Company until it closed. They had no bank account in 1939. In 1941 they opened a joint account in the Jenkintown Bank & Trust Company. They also had a joint account in the Abingdon Bank & Trust Company. Mrs. Phy did not sign or draw checks on any of the joint accounts. In 1943, the Ralph Kearney Company was doing work on radar equipment. The quantity of work furnished to petitioner so increased, petitioner and his wife were required to devote about 15 hours a day, including Sundays. The completed product was loaded and delivered by them both, sometimes in the early hours of the morning. At times both petitioner and his wife worked at the Kearney Company plant where equipment, which they did not have in their basement, was available. Petitioner was a skilled metal worker. He fixed the prices to be charged for the work, laid out the work, and performed the bulky and dangerous operations. Mrs. Phy's efforts were principally confined to drilling, punching and polishing the various parts. All the materials were furnished to them by the Kearney Company. All the moneys received from their joint efforts were *144 "pooled" or deposited in joint bank accounts at the times the accounts were in existence. The business consisted principally of the performance of labor. No capital investment was required except the small amount expended from time to time for tools and equipment. In October 1943, Edward Cole, a bookkeeper for the Heinz Company, was engaged to set up books of account. Thereafter, from data furnished by both petitioner and his wife, Cole made the book entries. For a number of years a Mr. Gleeson, a real estate agent who also engaged in preparing tax returns, had prepared the returns filed by petitioner. In 1943 and 1944 he also prepared the returns of Mrs. Phy. In 1944 he prepared a partnership return which was the first partnership return filed in connection with the basement business. Neither petitioner nor his wife had any knowledge concerning income tax returns but signed the returns prepared by Mr. Gleeson from data they furnished to him. The 1943 income tax return filed by petitioner showed he was conducting a business of "Sheet Metal Stamping & Specialties" and a deduction therein for labor performed in the amount of $2,948.59. The 1943 income tax return filed by Mrs. Phy reports *145 as wages received from "Albert C. Phy," as her employer, the amount of $2,948.59. Petitioner testified he had never paid any wages to his wife. Mrs. Phy testified she had never received any salary or compensation from the business. The total amount reported on Mrs. Phy's return, and the amount reported on petitioner's 1943 return as income from the basement business, equal the net income from that business. In September 1944, petitioner consulted with J. Webster Jones, Esq., an attorney, about drafting his and Mrs. Phy's wills, about their real estate, insurance and joint bank accounts, and the basement business. At this conference petitioner disclosed to his attorney the details concerning the basement business and how it developed from the year 1931. The attorney advised him of the advisability of executing a written agreement evidencing a partnership. Later petitioner spoke to Mr. Cole, the bookkeeper, about a written partnership agreement and he prepared the following instrument on a ledger sheet: "Partnership Agreement "As of October 31, 1944 it was agreed that the business be conducted as a partnership the two partners being Albert C. Phy and his wife Mrs. Albert C. Phy. *146 "The capital invested as of the close of 1943 was to be divided equally and the withdrawals to date by both as wages were to be divided equally. "The profits were to be divided equally and the survivor in case of death would become sole owner. "Withdrawal from the business would be by agreement between the two. "The acceptance of this agreement is acknowledged by both partners who have signed below. "(Signed) Emily S. Phy "(Signed) Albert C. Phy" The business was thereafter operated in the same manner it had been previously operated. Prior to her marriage to petitioner, Mrs. Phy had followed the vocation of a trained nurse. After her marriage and including the taxable year she occasionally performed nursing services lasting as long, in some instances, as two weeks. She prepared the family meals, but employed help to do the household work and laundry. She had no metal or machine experience prior to receiving instructions from her husband. All the work which petitioner performed in the basement for others was furnished by the Ralph Kearney Company. The petitioner fixed the prices at which the work was to be performed which was on a unit basis. He sublet some of the *147 work to others and fixed the prices at which such work was sublet in 1944 as well as before. Bills were rendered to the Kearney Company by petitioner and the check in payment was made payable to the petitioner. In his deficiency notice the respondent in determining the net income of the business designated "Albert C. Phy" allowed as a deduction "Salary to Emily S. Phy $3,925.22." He increased petitioner's income by the amount of $4,345.92, with the following explanation: "This item represents the balance of net income of the alleged partnership designated as Albert C. Phy which is held to be taxable income to be included in your return." Opinion The sole issue presented is whether all the net income of a business conducted in the taxable year 1944 under the name of "Albert C. Phy" is taxable to petitioner as sole proprietor. In support of his position that the basement business was the sole proprietorship of petitioner, the respondent argues that the record establishes: petitioner was a skilled metal worker; he fixed all the prices at which the work was to be performed; all bills were submitted and all payments made in the name of petitioner; petitioner determined the amount *148 of work that was to be sublet and fixed the prices to be paid therefor; petitioner's wife performed services for petitioner for which she received compensation in the form of wages and so reported on her income tax return for 1943; the wife never drew any checks against the joint bank account, and was never held out as having any proprietary interest in the business; no proof was tendered that a certificate had been filed showing that petitioner's wife was interested in the business, as required by the Fictitious Names Act of Pennsylvania; no partnership books showing how the accounts had been kept were offered by petitioner; and, evidence shows that the wife of petitioner was a trained nurse and at times engaged in the practice of such profession. The respondent having determined that the business conducted under the name of "Albert C. Phy" was a sole proprietorship, the burden rested upon the petitioner to establish that such determination was erroneous. While this record shows that a small business was initiated and developed in the basement of their home, to which petitioner and his wife devoted, at various times, their labor and services, we think the facts heretofore set forth *149 may well warrant the inference that the business was in fact the separate business of petitioner rather than their joint business. Likewise, in view of this record, it may well be that it was not until the income from the business became substantial that either petitioner or his wife ever regarded the business as other than that of petitioner. The inconsistencies between the testimony adduced at the trial and what the facts show was done require us to conclude that petitioner has failed to carry the burden of showing error in the respondent's determination. For a failure of proof we, therefore, sustain the respondent. Decision will be entered for the respondent.